IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TAMRA LYNN D.,[1]                         3:18-cv-00871-BR

          Plaintiff,                      OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.


**MERRILL SCHNEIDER**
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, OR  97293
(503) 255-9092

          Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

─────────────────────

     [1] In the interest of privacy this Opinion uses only the
first name and the initial of the last name of the non-
governmental party in this case.  Where applicable, this Opinion
uses the same designation for the nongovernmental party's
immediate family member.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**JEFFREY E. STAPLES**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3706

          Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Tamara Lynn D. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

On November 15, 2013, Plaintiff protectively filed her

application for DIB and SSI benefits.  Tr. 16.[2]  Plaintiff

alleges a disability onset date of April 20, 2011.  Tr. 16, 326,

328.  Plaintiff's application was denied initially and on

reconsideration.  An Administrative Law Judge (ALJ) held

hearings on June 20, 2016; October 4, 2016; and November 4,

2016.  Tr. 36-108.  Plaintiff and a vocational expert (VE)

testified at the hearing on October 4, 2016, and a medical

expert testified at the hearing on November 4, 2016.  Plaintiff

was represented by an attorney at each of the hearings.

On January 4, 2017, the ALJ issued an opinion in which he

found Plaintiff is not disabled and, therefore, is not entitled

to benefits.  Tr. 16-29.  Plaintiff requested review by the

Appeals Council.  On March 13, 2018, the Appeals Council denied

Plaintiff's request to review the ALJ's decision, and the ALJ's

decision became the final decision of the Commissioner.

Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On May 17, 2018, Plaintiff filed a Complaint in this Court

seeking review of the Commissioner's decision.

---

[2] Citations to the official transcript of record filed by
the Commissioner on November 8, 2018, are referred to as "Tr."

**BACKGROUND**

Plaintiff was born on June 22, 1967.  Tr. 28, 326, 328.
Plaintiff was 43 years old on her alleged disability onset date.
Tr. 28.  Plaintiff has at least a high-school education.
Tr. 28.  Plaintiff has past relevant work experience as a bus
driver and general office-worker.  Tr. 27.

Plaintiff alleges disability due to low back pain,
sciatica, anxiety, depression, migraines, high blood pressure,
asthma, and bilateral carpal-tunnel syndrome.  Tr. 109.

Except as noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 23-27.

**STANDARDS**

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110
(9th Cir. 2012).  To meet this burden, a claimant must
demonstrate her inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is more than a mere scintilla [of evidence] but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th

Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity (SGA). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the

listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since April 20, 2011, Plaintiff's alleged disability onset date. Tr. 18.

At Step Two the ALJ found Plaintiff has the severe impairments of lumbar degenerative disc disease, obesity, and an ankle fracture followed by multiple surgeries. Tr. 19.

At Step Three the ALJ concluded Plaintiff's medically

determinable impairments do not meet or medically equal one of
the listed impairments in 20 C.F.R. part 404, subpart P,
appendix 1.  Tr. 21.  The ALJ found Plaintiff has the RFC to
perform light work with the following limitations:  can stand
and walk up to four hours in an eight-hour work day; requires
the ability to alternate between sitting and standing as needed;
can occasionally push and pull; can operate foot controls with
her left foot; can occasionally climb ramps and stairs; cannot
climb ladders, ropes and scaffolds; can occasionally stoop,
kneel, crouch, and crawl; should avoid concentrated exposure to
fumes, odors, dusts, and gases; and requires the use of a cane
to ambulate "but would remain on task."   Tr. 22.

At Step Four the ALJ concluded Plaintiff is unable to
perform her past relevant work.  Tr. 27.

At Step Five the ALJ found Plaintiff can perform other jobs
that exist in the national economy such as small-product
assembler and price-marker.  Tr. 28-29.  Accordingly, the ALJ
found Plaintiff is not disabled.  Tr. 29.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) failed to
provide clear and convincing reasons for discounting Plaintiff's

testimony and (2) failed to provide clear and convincing evidence for rejecting the medical opinions of Plaintiff's treating providers, Kathryn Glassberg, M.D., and Valerie Garst, M.S.

## I.  The ALJ did not err when he found Plaintiff's testimony was not fully credible.

Plaintiff contends the ALJ erred when he failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony.

### A.  Standards

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant is not required to show that his "impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A

claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id*.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B.   Analysis**

In a Function Report dated December 21, 2013, Plaintiff indicated she is unable to walk, to stand, to sit, or to lie down for longer than twenty minutes. Tr. 383. She also

alleged her hands cramp up, she drops things, she experiences chronic migraines that interfere with work and functioning, and her anxiety and depression make it difficult for her to leave her home on most days. *Id.*

The ALJ discounted Plaintiff's testimony regarding her symptoms on the ground that Plaintiff's testimony was inconsistent with the medical and other evidence in the record. Tr. 25. For example, the ALJ noted a lumbar MRI in November 2010 showed spondylosis at L5-S1 with a central disc protrusion and bilateral foraminal stenosis with possible nerve-root impingement on the left. Tr. 23, 128-29. In an examination in June 2011 Kimberly Smith-Cupani, M.D., Plaintiff's treating physician at that time, noted it was difficult to assess Plaintiff's muscle strength because she was uncooperative during the examination. Tr. 24, 512. Nevertheless, shortly after Plaintiff's alleged onset date in September 2012 Plaintiff was walking two or three times daily and was taking care of her two grandchildren. Tr. 26, 648. In July 2013 Dr. Glassberg noted a normal gait. Tr. 644-45. Another MRI in August 2013 showed results similar to the earlier MRI in November 2010. Tr. 24, 726. In December 2013 Plaintiff fractured her ankle. She required two surgeries in February 2014. The ALJ noted:

> By June 2014, however, the fracture had healed
> and [Plaintiff] was in a walking boot. By July,
> [Plaintiff] transitioned to a brace, and by
> September, her physical therapist wanted to begin
> weaning her off the brace.

Tr. 25-6. In August 2015 an MRI showed mild degenerative disc disease at L5-S1 but was otherwise unremarkable. Tr. 1233.

At the hearing Plaintiff testified she has used a four-wheeled walker since 2013 or 2014. Tr. 68-69. In February 2016 Plaintiff reported she used her cane or walker only "occasionally." Tr. 1092. The record reflects Plaintiff was ambulating "independently" in April and June 2016, and Plaintiff reported she used a cane or walker only "occasionally." Tr. 1092, 1197, 1332. In any event, even when "activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). As noted, the ALJ found Plaintiff's testimony was inconsistent with the medical and other evidence in the record.

Plaintiff contends the ALJ erred by failing to consider Plaintiff's allegations when assessing her RFC and posing a hypothetical to the VE. Because the ALJ found Plaintiff's testimony not credible, however, the ALJ was not

required to consider her alleged limitations when assessing her RFC. The ALJ, therefore, did not err when he did not incorporate Plaintiff's alleged limitations in his hypothetical posed to the VE. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

On this record the Court concludes the ALJ did not err when he discounted Plaintiff's symptom testimony on the ground that it was not fully credible because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## II. The ALJ properly evaluated the medical opinions of Dr. Glassberg and Counselor Garst, Plaintiff's treating providers.

Plaintiff contends the ALJ erred when he discounted the medical opinions of Kathryn Glassberg, M.D., Plaintiff's treating physician, and Valerie Garst, M.S., Plaintiff's treating mental-health counselor.

### A. Standards

#### 1. Medical Opinions

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability — the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir.

2014). "In conjunction with the relevant regulations, [courts] have . . . developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008). Specifically, the court must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Garrison*, 759 F.3d at 1012. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* Although the opinion of a treating physician is entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a nonexamining physician. *Ryan,* 528 F.3d at 1198. "The weight afforded a nonexamining physician's testimony depends 'on the degree to which [he] provide[s] supporting explanations for [his] opinions.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(3)).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are

supported by substantial evidence." *Id.* Even when contradicted, a treating or examining physician's opinion is still owed deference and will often be "entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick,* 157 F.3d at 725. "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

### 2. Medical Sources

Medical sources are divided into two categories: "acceptable medical sources" and "other sources." 20 C.F.R. §§ 404.1513, 416.913. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. §§ 404.1513(a), 416.913(a). Medical sources classified as "other sources" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors. 20 C.F.R. §§ 404.1513(d), 416.913(d).

With respect to "other sources," the Social Security

Administration notes:

> With the growth of managed health care in recent
> years and the emphasis on containing medical
> costs, medical sources who are not acceptable
> medical sources, such as nurse practitioners,
> physician assistants, and licensed clinical
> social workers, have increasingly assumed a
> greater percentage of the treatment and
> evaluation functions previously handled primarily
> by physicians and psychologists. Opinions from
> these medical sources, who are not technically
> deemed acceptable medical sources under our
> rules, are important and should be evaluated on
> key issues such as impairment severity and
> functional effects, along with the other relevant
> evidence in the file.

SSR 06-03p, at *3. Factors the ALJ should consider when
determining the weight to give an opinion from those "important"
sources include the length of time the source has known the
claimant, the number of times and frequency that the source has
seen the claimant, the consistency of the source's opinion with
other evidence in the record, the relevance of the source's
opinion, the quality of the source's explanation of his opinion,
and the source's training and expertise. SSR 06-03p, at *4. On
the basis of the particular facts and the above factors, the ALJ
may assign a not-acceptable medical source either greater or
lesser weight than that of an acceptable medical source. SSR
06-03p, at *5-6.

The ALJ, however, must explain the weight assigned to

such sources to the extent that a claimant or subsequent
reviewer may follow the ALJ's reasoning.  SSR 06-03p, at *6.
"The ALJ may discount testimony from . . . 'other sources' if
the ALJ 'gives reasons germane to each witness for doing so.'"
*Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r Soc. Sec.
Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

### B.   Analysis

#### 1.   Dr. Glassberg

Dr. Glassberg has been Plaintiff's treating physician
almost continuously since January 2010.  Tr. 671.  On June 24,
2016, Dr. Glassberg completed a medical-source questionnaire and
indicated Plaintiff's medical conditions included:  "chronic
back pain (with X-ray showing advanced DDD), recurrent
headaches, obesity, bladder incontinence, chronic ankle pain
(s/p 4 surgeries), and anxiety."  Tr. 1302.  Dr. Glassberg
stated Plaintiff would "miss 16 hours (the equivalent of two
full workdays) or more a month from even a simple and routine
sedentary job because of [Plaintiff's] impairments, symptoms,
medications, and their side effects."  Tr. 1305.  Dr. Glassberg
noted her opinion was based on "several office visits over many
years, the patient has consistently reported worsening back pain
validated by X-rays demonstrating degenerative disc disease."

*Id.*  Dr. Glassberg specifically declined to make any functional capacity assessment on the basis that such examinations "are performed by a certified expert in the field not available at Kaiser" and are "not a covered benefit."  Tr. 1305.

The ALJ gave Dr. Glassberg's opinion "partial weight" on the grounds that her opinion was based "mostly" on Plaintiff's subject complaints, it was "not well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is inconsistent with other substantial evidence in the record."  Tr. 26-27.  In contrast, the ALJ gave "great weight" to the 2014 opinions of the state-agency medical consultants that Plaintiff had the RFC to perform light work with some limitations.  Tr. 26.  The ALJ noted these experts were "well-versed in the assessment of functionality" as it pertains to disability claims and their opinions were consistent with "the objective medical evidence" including records of physical examinations.  *Id.*

Even though Plaintiff's x-rays demonstrated the existence of degenerative disc disease, the "mere existence of an impairment is insufficient proof of disability."  *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).  *See also Leddy v. Berryhill*, 702 F. App'x 647 (9th Cir. 2017)("The existence of a

mental impairment alone does not establish functional limitation or disability.").  The ALJ noted a lumbar MRI in November 2010 showed spondylosis at L5-S1 with a central disc protrusion and bilateral foraminal stenosis with possible nerve-root impingement on the left.  Tr. 23, 128-29.  As noted earlier, however, shortly after Plaintiff's alleged onset date in September 2012 Plaintiff was walking two or three times daily and was taking care of her two grandchildren.  Tr. 26, 648.  An MRI in August 2013 also showed results similar to the earlier MRI in November 2010.  Tr. 24, 726.  In July 2013 Dr. Smith-Cupani examined Plaintiff's back and found full range of motion, full strength, and noted a normal gait even though Plaintiff reported spinal tenderness.  Tr. 644-45.  An MRI in August 2015 showed Plaintiff had mild degenerative disc disease at L5-S1, but otherwise was unremarkable.  Tr. 1233.

The ALJ also noted an impartial medical expert, Eric Schmitter, M.D., testified at the hearing that Plaintiff did not have any functional limitations.  Tr. 27, 50-51.  Although the ALJ gave Dr. Schmitter's opinion "little weight," he noted "the lumbar MRIs support at least mild limitations, even with minimal clinical correlation."  Tr. 27.

## 2. Counselor Garst

Counselor Garst has been Plaintiff's treating therapist since March 2015.  On June 16, 2016, Counselor Garst completed a medical-source questionnaire.  Tr. 1298-1301. Counselor Garst diagnosed Plaintiff with major depressive disorder, panic disorder, and agoraphobia.  Tr. 1298.  Despite the fact that Plaintiff had scheduled monthly therapy appointments, Counselor Garst indicated Plaintiff frequently missed her appointments.  Tr. 1298.  Counselor Garst also indicated Plaintiff had marked limitations with concentration, persistence or pace, social functioning, and activities of daily living.  Tr. 1299-1300.  Based on those limitations and Plaintiff's history of missed appointments, Counselor Garst stated Plaintiff would miss at least two workdays per month and her attendance record would be "unacceptable at any normal job." Tr. 1301.

The ALJ gave Counselor Garst's opinion "little weight" on the grounds that she was not an acceptable medical source and her short and infrequent treatment of Plaintiff did not provide an adequate basis for her opinion.  Tr. 21.  For example, the ALJ noted Plaintiff frequently missed her monthly therapy sessions and only attended five sessions during the fifteen

months that Counselor Garst treated Plaintiff.  Tr. 1298.  The
length and frequency of treatment is a factor the ALJ may
consider when deciding the weight to give an opinion.  20 C.F.R.
§§ 404.1527(c)(2)(i), 416.927(c)(2)(i).

The ALJ also noted Counselor Garst's opinion was
inconsistent with Plaintiff's activities of daily living.
Tr. 21.  Although Counselor Garst stated Plaintiff had marked
difficulty with social functioning as demonstrated by the fact
that she "avoids interactions with others," Plaintiff indicated
she had never been fired or laid off from a job because of
problems getting along with other people, she maintained she
gets along "fine" with authority figures, and stated she spends
time with others once or twice a week.  Tr. 387-88.  Plaintiff
also indicated she is less active now, and she spends more time
watching television and reading.  Although she does not need
someone to accompany her when she goes out, she stated she
spends less time away from home.  Tr. 387.  The ALJ may consider
inconsistencies between a treating provider's opinion and a
claimant's daily activities as constituting specific and legitimate
reasons to discount the opinion of a medical provider.  *Ghanim v.
Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

On this record the Court concludes the ALJ did not err

when he discounted the opinions of Counselor Garst because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 3rd day of April, 2019.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge